IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WHITNEY BANK, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL J. MURPHY, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff/ | ) | CIVIL ACTION NO. 11-00614-KD-M |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CECELIA PFEIFFER, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

ORDER

        This action is before the Court on the Motion for Summary Judgment (Doc. 49) and

supporting brief and exhibits (Docs. 50 & 51) filed pursuant to Rule 56 of the Federal Rules

of Civil Procedure by Plaintiff/Counterclaim Defendant Whitney Bank ("Whitney") and

Third Party Defendant Cecelia Pfeiffer ("Pfeiffer").  Defendant/Counterclaim Plaintiff/Third

Party Plaintiff Daniel J. Murphy ("Murphy") has filed a responding brief and supporting

exhibits (Docs. 54-56) in opposition to the motion, and Whitney and Pfeiffer have filed a

reply (Doc. 58) to Murphy's response, as well as a Motion to Strike (Doc. 57) regarding

certain evidence submitted by Murphy.  Murphy has filed a response (Doc. 60) to the Motion

to Strike.  Upon consideration of the evidence and arguments submitted, the Court finds that

the Motion for Summary Judgment is due to be **GRANTED**.[1]

---

[1] Whitney and Pfeiffer's Motion to Strike is **MOOT**.  The Court has found in favor of Whitney and

## I.     Procedural History

On October 27, 2011, Whitney commenced this action by filing a Complaint (Doc. 1) alleging breach of contract by Murphy arising from his default on a Balloon Note and Mortgage executed by him in favor of Whitney.  On February 23, 2012, Murphy filed an Answer denying breach, along with Counterclaims against Whitney and a Third Party Complaint against Pfeiffer (Doc. 6).  In eight Counts, Murphy alleges the following causes of action against Whitney and Pfeiffer: negligence, wantonness, misrepresentation, suppression, fraudulent inducement, constructive fraud, civil conspiracy, and breach of covenant of good faith and fair dealing.  Whitney and Pfeiffer denied liability on all of Murphy's clams.  (Doc. 8).[2]  On January 10, 2013, Whitney and Pfeiffer filed the present motion (Doc. 49) requesting summary judgment in their respective favor on all claims, counterclaims, and third-party claims.  The motion is now ripe for the Court's consideration.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56(c) governs procedures and provides as follows:

> **(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>   (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

Pfeiffer on all respective claims, with none of the offending evidence being material to this decision.

[2] The Court is satisfied after a review of the record that it has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Whitney and Pfeiffer, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).

If the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving parties are entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether the non-moving party has met his burden, the Court must stop short of weighing the evidence and making

3

credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).

### III.   Facts[3]

#### a.  The Condominium Development

Sometime in 2005, Murphy learned of the planned construction of the Grander Condominium ("Grander") in Orange Beach, Alabama, from Marion Uter ("Uter") while the two were fishing.  (Doc. 50-1 at 2, Murphy Depo., pp. 50-51).  Uter invited Murphy to purchase a unit in the development.  (Id., p. 51).  On December 7, 2006, Murphy entered into a Purchase Agreement with UCO, LLC for the purchase of a condominium unit located at 4690 Grander Court, Orange Beach, Alabama ("Condo Unit").  (Id. at 7, p. 79; Doc. 50-2, Preconstruction Purchase & Escrow Agreement for the Grander).  Murphy agreed to a purchase price of $650,000 for the Condo Unit (Doc. 50-2 at 2), as well as a separate price of $50,000 for a boat slip (Doc. 50-1 at 7, p. 78; Doc. 50-3, Boat Slip Purchase Agreement) and a $30,000 charge for an elevator upgrade (Doc. 50-1 at 7, p.78; Doc. 50-4, Addendum to Contract), for a total of $730,000.  In entering into this agreement, Murphy relied primarily on the representations of Uter and Ross Easter ("Easter"), another person involved in the development.  For example, Uter provided rough sketches of  the plans for the project and a tour of the project site.  The Grander was still being constructed when Murphy closed on the

---

[3] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [Murphy,] the nonmoving party."  Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997).

Condo Unit .  (Doc. 50-1 at 3, 8, 11, pp. 53-55, 81-84, 93).  Murphy was not shown any official condominium documents, blueprints, architectural drawings, etc., did not conduct his own appraisal, did not compare his purchase price to those of other Grander investors, and did not survey similar condominium developments in the area.  (Id. at 8, 11, pp. 82-84, 93).

### b.  The Loan

Later that December, after executing the Purchase Agreement, Murphy was contacted by Pfeiffer, a loan originator with Whitney, about arranging a loan for the purchase of the Condo Unit.[4]  (Id. at 4, p. 57; Doc. 50-5 (Pfeiffer Depo.) at 2, 4, pp. 17-18, 58; Doc. 54-1 (Murphy Depo) at 18-19, pp. 71-73).  Prior to entering into the loan agreement, Whitney obtained an appraisal of the Condo Unit from a certified appraiser, Donald Holyfield ("Holyfield"), who had performed many such appraisals for Whitney.[5]  (Doc. 50-5 at 2-3, pp. 20-22; Doc. 50-6 (Holyfield Appraisal Report); Doc. 51-1 (Holyfield Dec.) at 1, ¶¶ 2-3)).  Based on his inspection of the property, training, and education, Holyfield concluded that the value of the Condo Unit was $850,000 as of December 18, 2006.  (Doc. 51-1 at 1, ¶ 4).  Holyfield reached this value opinion independently; neither Whitney nor Pfeiffer asked or colluded with him to misrepresent the value or deviate from his professional standards.  (Id. at 2, ¶ 6).

---

[4] Murphy believes that Easter and Uter arranged to have Pfeiffer contact him.  Murphy had been told by Easter and Uter that Whitney had a relationship with the Grander development and was handling loans for the condominium units. (Doc. 54-1 at 17-19, pp. 67-76).  Pfeiffer admits that she originated six loans, including Murphy's, on Grander units.  However, Whitney had not entered into any agreement to be the exclusive provider of loans for the Grander development.  Pfeiffer had no prior communication or dealings with Uter or Easter and had not heard of them or their company.  (Doc. 50-5 at 2, 5, pp. 19-20, 122-23; Doc. 54-4 (Pfeiffer Depo.) at 14, 32, pp. 53, 127).

[5] Whitney routinely obtains appraisals as part of the loan underwriting process in order to determine the value of property being pledges as collateral for loans.  (Doc. 50-5 at 2-3, pp. 20-23).

Murphy received a copy of the appraisal report when the loan closing documents were sent to him and "just assumed it to be right." (Doc. 50-1 at 7, 9, pp. 77, 85-87). Pfeiffer "would assume" that Murphy requested a copy of the appraisal. (Doc. 54-4 at 33, pp. 129-30). Murphy received no other information from Whitney relating to the value of the Condo Unit. (Doc. 50-1 at 18, p. 144). On December 27, 2006, Murphy executed a Balloon Note in the amount of $620,000 in favor of Whitney for the purchase of the Condo Unit. (Id. at 4-5, pp. 57, 61; Doc. 51-4 (Balloon Note)). The Balloon Note was secured by a Mortgage executed the same day by Murphy, which granted Whitney a security interest in the Condo Unit. (Doc. 50-1 at 4, pp. 57-58; Doc. 51-5 (Mortgage)). Murphy ceased making payments pursuant to the terms of the Balloon Note and Mortgage (collectively, "the Loan Documents"), and Whitney accelerated the indebtedness. (Doc. 50-1 at 6, pp. 67-68; Doc. 51-8 (Buntin Dec.) at 3, ¶ 10). Whitney claims an outstanding balance on the Loan Documents in the amount of $654,150.78 as of January 10, 2013, consisting of a principal balance in the amount of $588,136.95, accrued interest in the amount of $65,079.42 ($116.82 *per diem*), accrued late fees in the amount of $634.41, and an appraisal fee in the amount of $300.00. (Doc. 51-8 at 3, ¶ 11). This amount does not include continuing interest or continuing costs and expenses. (Id.).

## IV.    Analysis

Before addressing the parties' substantive contentions, the Court must first decide what law governs the claims and counterclaims in this diversity action. "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th

6

Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Alabama courts follow the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti*.  Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So. 3d 200, 213 (Ala. 2009). Accordingly, in Alabama, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement, Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991), and the substantive rights of tort claimants are determined according to the laws of the state where their alleged injuries occurred. Fitts v. Minn. Mining & Mfg. Co., 581 So. 2d 819, 820 (Ala. 1991).

In this case, the Mortgage provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located."  (Doc. 51-5 at 11, ¶ 16).  The Condo Unit is located in Alabama.  Though the Balloon Note does not itself contain a choice-of-law provision, it does appear to incorporate that found in the Mortgage through the following provision: "In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument'), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note."  (Doc. 51-4 at 2, ¶ 10).  Therefore, the Court will apply Alabama law to the breach of contract claims.

All parties have applied Alabama law to Murphy's tort-based counterclaims and third party claims in their briefing, and no party has argued that the laws of any other jurisdiction

should otherwise apply.  Murphy arguably suffered injury in Alabama in connection with the events at issue.  As such, the Court will also apply Alabama substantive law to the tort claims in this action.[6]

### a.  Whitney's Breach of Contract Claim

In the Complaint, Whitney alleges that Murphy has "defaulted under the terms of the Balloon Note and Mortgage" and left an outstanding balance due (Doc. 1, ¶¶ 9-10), damaging Whitney as a result.  Under Alabama law, the essential elements of a cause of action for breach of contract are the existence of a valid contract binding the parties, a plaintiff's performance under the contract, a defendant's nonperformance, and damages.  See, e.g., Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1195 (Ala. 2003).   Whitney has established the existence of a valid contract (the Loan Documents), its performance under the contract (loaning Murphy the $620,000), Murphy's non-performance (Murphy's default on the Loan Documents with an outstanding balance due), and its damages (loss of the amount

---

[6] There is some indication that Texas substantive law would apply to Murphy's tort claims.  All pleadings allege that Murphy is a resident of Texas, and record evidence indicates that Murphy executed the Loan Documents (and received the appraisal he allegedly relied on) by mail while in Texas.  (Doc. 54-1 at 19, pp. 74-75).  Murphy has never lived in Alabama.  (Id. at 2, ¶ 8).  Murphy's alleged injuries include financial harm and "mental stress and anguish."  (Doc. 6).  Any mental stress and anguish would seem to have been suffered by Murphy at his residence in Texas.  There is also some authority that indicates Texas would be considered the site of Murphy's financial injuries, as that is where it would seem that he also suffered economic harm.  See In re Trinsic, Inc., No. 07-10324, 2008 WL 2115336, at *3 (Bankr. S.D. Ala. May 19, 2008) ("When the injury is financial, . . . the place of the wrong or injury is where the financial injury is felt.  See The Bradbury Co. v. Teissier-duCros, 387 F. Supp. 2d 1167, 1173 (D. Kan. 2005) (finding the injury to have occurred in the state where the plaintiff resided and suffered a financial injury); Restatement (First) of Conflict of Laws § 377 cmt. a, illus. 4 (1934) ("When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made").  Courts in Alabama faced with financial injury claims based in fraud, have consistently held that under the doctrine of lex loci delicti, the place of the injury is where the economic harm was suffered.  Glass[ v. Southern Wrecker Sales], 990 F. Supp. [1344, ]1348[ (M.D. Ala. 1998)]; Chambers v. Cooney, 2007 WL 2493682, *11 (S.D. Ala. 2007).").  As stated, however, no party has applied the law of Texas or any other jurisdiction but Alabama in analyzing Murphy's claims.

loaned to Murphy and not repaid).

Murphy does not dispute the validity of the Loan Documents (Doc. 50-1 at 3-5, pp. 56-61), his failure to make all scheduled payments (Id. at 5, 14, pp. 63, 119), or the fact that Whitney was damaged by Murphy's failure to satisfy his debt.  Murphy's sole defense to Whitney's breach of contract claim is that Whitney failed to fully perform under the Loan Documents because it violated the implicit requirement of good faith and fair dealing when it delivered an appraisal to Murphy, at Murphy's request, that contained "material, factual errors[.]"  (Doc. 54 at 17).

Alabama common law "recognize[s] the general rule that every contract carries with it an implied-in-law duty of good faith and fair dealing.  This duty provides that neither party will interfere with the rights of the others to receive the benefits of the agreement."  Hilley v. Allstate Ins. Co., 562 So. 2d 184, 190 (Ala. 1990).  An "obligation of good faith in []performance and enforcement" is also imposed on contracts by statute.  Ala. Code § 7-1-304.  However, the Alabama Supreme Court has "clearly and specifically held that a duty of good faith in connection with a contract is directive, not remedial, and that therefore an action will not lie for breach of such a duty."  Tanner v. Church's Fried Chicken, Inc., 582 So. 2d 449, 452 (Ala. 1991) (citing Government Street Lumber Co., Inc. v. AmSouth Bank, N.A., 553 So. 2d 68 (Ala. 1989)).  See also Tidmore Oil Co., Inc. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co., 932 F.2d 1384, 1391 (11th Cir. 1991) ("Although Alabama has recognized that 'every contract implies an obligation of good faith and fair dealing,' Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 738 (Ala.1987), it has spoken little about the contours of this obligation. The covenant is designed to 'preserve the spirit of the

9

contract rather than the form' and to protect the reasonable expectations of the parties. Id. The intent of the covenant is to ensure that 'a contracting party shall not try to deprive the other of the consideration for which he bargained.' Id.")

The duty of good faith and fair dealing does not serve to rewrite or supplement the express terms of a contract.  See Shoney's LLC v. MAC E., LLC, 27 So. 3d 1216, 1223 (Ala. 2009) ("Where the parties to a contract use language that is inconsistent with a commercial-reasonableness standard, the terms of such contract will not be altered by an implied covenant of good faith.").  Cf. Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (Under Georgia law, the implied covenant of good faith and fair dealing "is not an independent contract term.  It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*.  But it is not an undertaking that can be breached apart from those terms." (internal citations omitted)).  Murphy's allegations of a breach of the duty of good faith by Whitney do not negate the fact that Whitney performed under the Promissory Note by loaning money to Murphy, and Murphy has not identified an express contract term that Whitney has failed to perform.  Thus, the Court finds that the record establishes Whitney's entitlement to summary judgment on its breach of contract claim, such that Whitney's motion for summary judgment on that claim is due to be **GRANTED**.

### b.  Murphy's Counterclaims & Third-Party Claims

Whitney and Pfeiffer also move for summary judgment on the counterclaims and third party claims, respectively, alleged by Murphy for negligence, wantonness, misrepresentation, suppression, fraudulent inducement, constructive fraud, civil conspiracy,

and breach of covenant of good faith and fair dealing.

### 1.   Breach of Covenant of Good Faith & Fair Dealing

In Count 8 of his Counterclaims/Third-Party Complaint, Murphy alleges that Whitney and Pfeiffer "breached the covenant of good faith and fair dealing, which is implied in every contract under Alabama law, by inflating the market value of [the Condo Unit] in order to induce Mr. Murphy into closing on the property." (Doc. 6 at 13, ¶ 50). Whitney and Pfeiffer allegedly "breached their duty by failing to discover the facts and circumstances under which the subject loan was made." (Id., ¶ 51). Murphy alleges that he "has been financially injured and harmed as a direct and proximate result" of this breach. (Id., ¶ 52).

Alabama's statutory good faith obligation, § 7-1-304, does not create a cause of action, either in tort or in contract. See Tidmore Oil Co., Inc. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co., 932 F.2d 1384, 1391 (11th Cir. 1991) ("In Alabama, the good faith provision of the Uniform Commercial Code, Ala. Code Ann. § 7-1-203, does not create a cause of action either in contract or in tort. Government Street Lumber Co. v. AmSouth Bank, N.A., 553 So. 2d 68 (Ala.1989). The provision is intended to be 'directive rather than remedial.'" Id. at 72."); § 7-1-304, Official Comments ("Except for changing the form of reference to the Uniform Commercial Code, this section is identical to former Section 1-203."); Jenelle Mims Marsh, Alabama Law of Damages § 35:2 n.1 (6th ed.) (With reference to § 7-1-304, noting: "[T]he provision of the UCC imposing an obligation of good faith does not create a cause of action in tort or contract. Government Street Lumber Co., Inc. v. AmSouth Bank, N.A., 553 So. 2d 68, 72, 9 U.C.C. Rep. Serv. 2d 1218 (Ala. 1989); Chandler v. Hunter, 340 So. 2d 818, 821, 21 U.C.C. Rep. Serv. 484 (Ala. Civ. App. 1976).")

Alabama's common law duty of good faith and fair dealing also does not provide Murphy a cause of action.  The Alabama Supreme Court "has explicitly held that there is no good faith contractual cause of action; that means that bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract."  Lake Martin/Ala. Power Licensee Ass'n, Inc. v. Ala. Power Co., Inc., 601 So. 2d 942, 945 (Ala. 1992) (internal citations omitted).  Accord Dyas v. City of Fairhope, Civ. A. No. 08-0232-W, 2010 WL 5158381, at *4 (S.D. Ala. Dec. 14, 2010) (Steele, C.J.), on reconsideration of other matters, Civ. A. No. 08-0232-WS-N, 2010 WL 5477754 (S.D. Ala. Dec. 30, 2010), aff'd, 452 F. App'x 911 (11th Cir. 2012).  Murphy has not identified a provision in the loan documents imposing the duty he alleges Whitney and Murphy have breached.

Murphy also cannot maintain a common law tort claim of bad faith.  "[I]n Alabama only insurance contracts give rise to a duty imposed by law on which a tort claim for bad faith performance can be based[,]" as the Alabama Supreme Court has "consistently declined . . . to extend to the area of general contract law the tort of bad faith that [it] ha[s] recognized in the context of insurance contract cases."  Grant v. Butler, 590 So. 2d 254, 256 (Ala. 1991). This case does not involve an insurance contract.

Thus, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's claim for breach of covenant of good faith and fair dealing.

### 2.      Misrepresentation

In Count 3 of his Counterclaims/Third Party Complaint, Murphy alleges that Whitney and Pfeiffer "negligently, recklessly, and/or intentionally misrepresented the value of the [Condo Unit] by falsely inflate [sic] its predevelopment market value" to induce him to enter

into the loan – specifically, by obtaining an "inflated appraisal" which "appraised the property at its post-development value . . ., rather than its predevelopment, current, at-the-time, actual fair market value."  (Doc. 6 at 6, 9, ¶¶ 11, 13, 30).  In Alabama, "[a] fraudulent-misrepresentation action is governed by § 6–5–101, Ala. Code 1975, which provides that '[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.' " Wyeth, Inc. v. Weeks, No. 1101397, 2013 WL 135753, at *3 (Ala. Jan. 11, 2013).   To establish a claim for fraudulent misrepresentation, Murphy must show that: 1) Whitney and/or Pfeiffer made a misrepresentation (false statement); 2) concerning a material existing fact; 3) Murphy reasonably relied on the misrepresentation; and 4) the reliance was to Murphy's detriment (*i.e.*, Murphy was damaged as a proximate result of so relying).  See, e.g., id.; Ex parte Novartis Pharms. Corp., 991 So. 2d 1263, 1275 (Ala. 2008); McCutchen Co., Inc. v. Media Gen., Inc., 988 So. 2d 998, 1001 (Ala. 2008).

   Regarding § 6-5-101, the Eleventh Circuit has further explained:

   The representation normally must be of a present fact not a future fact, Sly v. First National Bank, 387 So. 2d 198 (Ala. 1980) nor an opinion, promise, or prophesy, Fidelity & Casualty Co. v. J. D. Pittman Tractor Co., 244 Ala. 354, 358, 13 So. 2d 669 (1943), unless the statement was expressed such that the other person may reasonably treat it as a fact, id. at 358, 13 So. 2d at 672, or if "there are circumstances tending to show fraudulent intent at the time of the promise or representation," Ringer v. First National Bank, 291 Ala. 364, 368, 281 So. 2d 261, 265 (1973).

Kaye v. Pawnee Const. Co., Inc., 680 F.2d 1360, 1366-67 (11th Cir. 1982).

   Murphy alleges that he "reasonably and/or justifiably relied on" the appraisal's valuation of the Condo Unit in entering into the loan and that he has suffered damage as a

result.  (Doc. 6 at 9, ¶¶ 31-31).  However, Murphy could not have reasonably relied on the Holyfield appraisal as a statement of fact, either material or otherwise.

As Whitney and Pfeiffer correctly argue, in Alabama, "appraisals are considered statements of opinion, rather than statements of fact." Brushwitz v. Ezell, 757 So. 2d 423, 432 (Ala. 2000). See also Kaye, 680 F.2d at 1368 ("Alabama courts consider a statement of value to be an opinion and not a fact. See, e.g., Stevens v. Alabama State Land Co., 121 Ala. 450, 25 So. 995 (1899) (land); Lake v. Security Loan Association, 72 Ala. 207 (1882) (stock)."); Vision Bank v. 145, LLC, Civ. A. No. 10-00521-KD-B, 2011 WL 5289070, at *9 (S.D. Ala. Nov. 4, 2011) (DuBose, J.).  Murphy, replying primarily on conclusory allegations and innuendo, has presented no evidence that either Whitney or Pfeiffer sent him the Holyfield appraisal with fraudulent intent, or that they otherwise presented it such that Murphy would have been reasonably expected to rely on it as a statement of fact.  For one thing, at the top of the very first page of the appraisal report is written: "The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, **opinion** of the market value of the subject property."  (Doc. 50-6 at 2 (emphasis added)).  Moreover, as the Alabama Supreme Court has stated:

> "[W]here the parties deal at arm's length, and the vendee is not fraudulently induced to forbear inquiries which it may be presumed every competent person would otherwise make for his own protection, expressions of opinion as to matters which lie in opinion merely-opinions as to current market values furnishing the most common example-will not constitute ground for an action of deceit, for the reason that the vendee, knowing the nature of such expressions, has no right to rely upon them. He should inquire and examine for himself."

Batchelor v. Batchelor, 502 So. 2d 751, 753 (Ala. 1987) (quoting Tillis v. Smith Sons Lumber Co., 188 Ala. 122, 133-34, 65 So. 1015, 1018 (1914)) (applying the reasoning

14

in <u>Tillis</u> to a claim of fraudulent misrepresentation).

The loan transaction in this case was an arm's length business transaction, and there is no evidence that Murphy was fraudulently induced from obtaining his own appraisal or otherwise making further inquiries about the value of the Condo Unit.  Rather, Murphy received the appraisal in the mail along with the loan closing documents and "just assumed it to be right."  (Doc. 50-1 at 7, 9, pp. 77, 85-87).

The Eleventh Circuit has held that, under Alabama law, "[e]ven an opinion on value is actionable, however, if the recipient states his ignorance and invites the opinion, and the speaker understands the recipient relies on the speaker's opinion as a fact so that the onus of a confidential relation results: if the recipient forbears independent inquiry because of an opinion elicited under these circumstances of confidence, Alabama courts will treat the statement as a fact reasonably relied upon."  <u>Kaye</u>, 680 F.2d at 1368 (footnote omitted).  Murphy claims that he requested a copy of the appraisal but in support cites only to Pfeiffer's assumption that he did.  (Doc. 54 at 11, 23-24).  Assuming that this is true, Murphy has presented no evidence that he professed his ignorance as to the value of the Condo Unit to Whitney or Pfeiffer, or that Whitney or Pfeiffer would have known that he would treat the appraisal as anything more than an opinion of value.

Additionally, the evidence indicates that the appraisal was prepared entirely by Holyfield, an independent contractor, and presented to Whitney and Pfeiffer, who then passed it on to Murphy.  Alabama law holds that " 'those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith.' "  <u>Legg v. Wyeth</u>, 428 F.3d 1317, 1324 (11th Cir. 2005)

(quoting Fisher v. Comer Plantation, Inc., 772 So. 2d 455, 463 (Ala. 2000)).  Murphy has presented no evidence indicating bad faith by either Whitney or Pfeiffer in supplying Murphy the appraisal.

Finally, as Whitney and Pfeiffer point out, Murphy has not presented sufficient evidence indicating that the appraised value of the Condo Unit was actually false – namely, that it was not worth $850,000 on December 18, 2006.  Murphy argues that "there is ample evidence that the value of the condominium unit was not $850,0000" (Doc. 54 at 18 (capital letters made lowercase)), citing the report (Doc. 54-2) and testimony (Doc. 54-3) of expert witness R.L. Farmer.  Farmer points out a number of perceived flaws, mistakes, and inaccuracies in the methodology of Holyfield's appraisal – primarily that the Condo Unit was appraised at its post-development value rather than the value it held at its predevelopment stage on December 18, 2011.  However, Farmer has not offered his own opinion as to the value of the Condo Unit at any point in time.[7]  Mere citation of these claimed errors in the Holyfield appraisal, without more, is not evidence that the final appraised value of $850,000 was false (or as "false" as an opinion can be) for the purposes of a claim of misrepresentation.  Therefore, not only has Murphy failed to show that the Holyfield appraisal was a material fact and that his reliance on it was reasonable, he has also failed to show that the appraisal itself was a false representation.

---

[7] (See, eg., Doc. 51-6 (Farmer Depo.) at 2, pp. 22-23):

Q:   Looking at the report, it's my understanding that you're not offering any opinion as to the market value of Unit 16-A.
A:   That's correct.
Q:   And you're not offering an opinion as to the market value of 16-A at any point in time?
A:   That's correct.
Q:   You're not offering an opinion of the market value of any unit at Grander?
A:   That's correct.

In light of these determinations, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's claim of misrepresentation.

### 3.  Suppression

In Count 4 of his Counterclaims/Third Party Complaint, Murphy alleges that Whitney and Pfeiffer "negligently, recklessly, and/or intentionally suppressed material information regarding the true market value of Mr. Murphy's property . . . As a result . . ., Mr. Murphy moved forward with the purchase of [the Condo Unit], instead of walking away from the purchase as he could have done under the terms of the purchase agreement."  (Doc. 6 at 10, ¶¶ 34-35).  More specifically, in his Response, Murphy argues that Whitney was obliged to communicate to him "1) the incomplete status of the Grander project; and 2) the true value of the comparable sales and Murphy's unit[.]"  (Doc. 54 at 23).

Fraudulent suppression is the "suppression of a material fact which the party is under an obligation to communicate."  Ala. Code § 6-5-102.  To establish fraudulent suppression, Murphy must demonstrate: 1) a duty on the part of Murphy and/or Pfeiffer to disclose an existing material fact; 2) suppression of the fact by Murphy and/or Pfeiffer; 3) that either/both had actual knowledge of the fact; 4) that the suppression of the fact induced Murphy to act; and 5) Murphy suffered actual damage as a proximate result of acting or of not acting. See, e.g., Coilplus-Alabama, Inc. v. Vann, 53 So. 3d 898, 909 (Ala. 2010); Brock v. Baxter Healthcare Corp., 96 F. Supp. 2d 1352, 1359 (S.D. Ala. 2000); Ex Parte Household Retail Servs., Inc., 744 So.2d 871, 879 (Ala. 1999); First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., 899 F.2d 1045, 1056 (11th Cir. 1990); Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc., 785 F. Supp. 2d 1258, 1275 (M.D. Ala. 2011) (citing State Farm Fire

17

& Cas. Co. v. Slade, 747 So. 2d 293, 323-324 (Ala. 1999) and Ala. Code § 6-5-102)). Additionally, a party faced with a motion for summary judgment on a fraudulent suppression claim must offer substantial evidence as to each of the elements. See Cork v. Marriott Int'l, Inc., 426 F. Supp. 2d 1234, 1246-47 (N.D. Ala. 2006) (citing Mason v. Chrysler Corp., 653 So. 2d 951, 954 (Ala. 1995)).

Whitney and Pfeiffer argue that they had no duty to disclose the "true" market value of the Condo Unit.  Whether there is a duty to disclose is a question of law. Barnett v. Funding Plus of America, Inc., 740 So.2d 1069, 1074 (Ala. 1999).  Such a duty may be created either by a "confidential relations[hip]" between the parties, or from the "particular circumstances of the case."  Ala. Code § 6-5-102.  See also, e.g., Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So. 2d 238, 245-246 (Ala. 1992).  Murphy argues that Whitney and Pfeiffer's duty to disclose is established by both a confidential relationship and the particular circumstances of this case because he requested a copy of the Holyfield appraisal from Whitney.  (Doc. 54 at 23-24).

In opposition to Murphy's suppression claim, Whitney and Pfeiffer cite this Court's opinion in Vision Bank v. 145, LLC, which noted:

> The Alabama Supreme Court has held that "[w]hile the relationship between a bank and its customer has been traditionally viewed by courts as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank, a fiduciary duty may, nevertheless arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances." Bank of Red Bay v. King, 482 So. 2d 274, 285 (Ala. 1985). The court concluded, however, that "[w]hen both parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relations, no duty to disclose exists when information is not requested, and mere silence is then not a fraud." (Id. (citing Mudd v. Lanier, 24 So.2d 550, 562 (Ala. 1945)). The Court emphasized that "[t]here must be active concealment or misrepresentation." (Id.). See also RNH, Inc. v. Beatty,

18

571 So.2d 1039, 1042 (Ala. 1990) (providing that "a duty to disclose exists in circumstances where parties are not dealing at arm's length[]").

Vision Bank v. 145, LLC, 2011 WL 5289070, at *12 n.6.

As such, in an arms' length transaction with no confidential relationship, a bright line rule generally applies: the parties have no general obligation to disclose, but each has an affirmative duty to respond "truthfully and accurately" to direct questions from the other. Shutter Shop, Inc. v. Amersham Corp., 114 F. Supp. 2d 1218, 1225 (M.D. Ala. 2000).

Per the reasoning in Bank of Red Bay, the creditor-debtor relationship between Murphy and Whitney does not automatically arise to a confidential relationship. Moreover, the undisputed evidence indicates that the loan was an arms' length transaction, and Murphy has presented no evidence that he requested any of the information Whitney and Pfeiffer allegedly suppressed (i.e. the incomplete status of the condominium development and the true values of the Condo Unit and comparable sales). At most, Murphy claims to have requested a copy of the Holyfield appraisal. Assuming that Murphy did make such a request, the undisputed evidence shows that Whitney and Pfeiffer provided him with the appraisal and that Murphy "just assumed it to be right," with no further inquiry. (Doc. 50-1 at 7, 9, pp. 77, 85-87).

In addition, "[a]n action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed." Coilplus-Ala., Inc. v. Vann, 53 So. 3d 898, 909 (Ala. 2010) (quotation and citations omitted). No evidence has been presented that Whitney or Pfeiffer knew the "true" values of either the Condo Unit or comparable sales; rather, they, like Murphy, simply relied on representations of those values made in the Holyfield appraisal report. The same is true regarding the incomplete status of the Grander development at the

19

time the loan was executed, as Pfeiffer's undisputed testimony indicates that she believed the development to be complete based on photographs contained in the appraisal report.  (Doc. 50-5 at 5, p. 121).  As stated *supra*, there is no evidence that Whitney or Pfeiffer knew that the appraisal report was incorrect in any way.

In light of these determinations, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's claim of suppression.

### 4.       Fraudulent Inducement

In Count 5 of his Counterclaims/Third Party Complaint, Murphy alleges that because Whitney and Pfeiffer "misrepresented the market value of the underlying property," he was induced to close on both the Condo Unit and the loan.  (Doc. 6 at 10-11, ¶¶ 38, 40).  A claim of fraudulent inducement under Alabama law is similar to one of misrepresentation.  In order to prevail on this claim, Murphy must prove: 1) Whitney and/or Pfeiffer had a duty to speak the truth; 2) Whitney and/or Pfeiffer made a false representation of material fact; 3) Murphy justifiably relied upon the false representation; and 4) as a proximate result, Murphy suffered loss, damage, or harm.  McGriff v. Minn. Mut. Life Ins. Co., 127 F.3d 1410, 1414 (11th Cir. 1997) (citing Kidder v. AmSouth Bank, N.A., 639 So. 2d 1361, 1362 (Ala. 1994), and Alfa Mut. Ins. Co. v. Northington, 561 So. 2d 1041, 1045 (Ala.1990)).  Accord Kountz v. Mayer Elec. Supply Co., Inc., Civ. A. No. 06-0515-BH-M, 2007 WL 1857021, at *5 (S.D. Ala. June 27, 2007) (Hand, J.).  As the Court has already determined in Section IV.b.2, *supra*, neither Whitney nor Pfeiffer falsely misrepresented a material fact to Murphy in sending him a copy of the Holyfield appraisal, and Murphy could not have justifiably relied on it as a fact. Therefore, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's

claim of fraudulent inducement.

### 5.    Constructive Fraud

Murphy alleges constructive fraud in Count 6 of his Counterclaims/Third Party Complaint. (Doc. 6 at 11-12).  Specifically, Murphy alleges that Whitney and Pfeiffer "negligently, recklessly, and/or intentionally falsely inflated its predevelopment market value of the underlying property and thereby willfully, recklessly without knowledge, or by mistake misrepresented a material fact in order to deceive [him] into closing on the property." (Id. at 11, ¶ 42).

Neither side has explained what a claim of constructive fraud under Alabama law involves.  Luckily, such a claim has been previously examined in this district:

> The common-law tort of constructive fraud is recognized under Alabama law; however, it remains something of an enigma, inasmuch as it is rarely invoked by litigants and has garnered scant mention in published Alabama authorities.[FN11] That said, the Alabama Supreme Court explained more than a half century ago that "[c]onstructive fraud at common law is the breach of a legal or equitable duty which, irrespective of the moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to inspire public interest." Hornaday v. First Nat'l Bank of Birmingham, 259 Ala. 26, 65 So. 2d 678, 687 (1953); see also Frost v. Latham & Co., 181 F. 866, 868 (S.D. Ala. 1910) (constructive fraud is "an act which the law declares to be fraudulent without inquiring into its motive") (citation omitted). A critical distinction between constructive fraud and other species of fraud is that "fraudulent intent does not have to be proven to establish a constructive fraud." First Bank of Childersburg v. Florey, 676 So. 2d 324, 332 (Ala.Civ.App.1996); see also Hornaday, 65 So. 2d at 687 ("Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.").
>
> > FN11 - Indeed, most references to constructive fraud in Alabama jurisprudence are in the context of Alabama's fraudulent conveyance statute. See, e.g., Cox v. Hughes, 781 So. 2d 197, 201 (Ala. 2000) (statutory fraudulent conveyance case in which court opined that "[t]he term constructive fraud is generally used to refer to those instances where a grantor, indebted at the time, conveys property without receiving valuable consideration") (citations omitted); McPherson Oil Co. v. Massey, 643 So.

21

2d 595, 596 (Ala.1994) (in statutory fraudulent transfer context, observing that "without regard to the actual intent of the grantor, the law infers constructive fraud when it appears that an indebted grantor has conveyed property to a family member without receiving valuable consideration"). Inasmuch as this action does not involve statutory claims of fraudulent conveyance, but instead involves a purely common-law cause of action, the line of Alabama authorities applying the concept of constructive fraud to the fraudulent conveyance statute is of limited utility here.

Consistent with the foregoing, it has been routinely held in jurisdictions throughout the country that the elements of proof for a common-law constructive fraud claim bear marked similarity to those for an ordinary fraud claim, except that the intent element is generally replaced by an element of some special circumstance or relationship requiring disclosure. See, e.g., E*TRADE Financial Corp. v. Deutsche Bank AG, 631 F. Supp. 2d 313, 387 (S.D.N.Y.2009) ("Constructive fraud requires establishing the same elements as actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties.") (citations and internal quotation marks omitted); 3D Global Solutions, Inc. v. MVM, Inc., 552 F.Supp.2d 1, 9 (D.D.C.2008) ("Constructive fraud differs from actual fraud in that constructive fraud need not be intentional."). Given the parallels between constructive fraud and ordinary fraud, it is hardly surprising that the elements of false representations and detrimental reliance are cornerstones of a common-law constructive fraud cause of action.

Abrams v. Ciba Specialty Chems. Corp., 663 F. Supp. 2d 1220, 1227-28 (S.D. Ala. 2009) (Steele, J.) (footnote omitted in last paragraph).

As explained in Sections IV.b.2 & .3, *supra*, the record evidence is insufficient to establish that either Whitney or Pfeiffer misrepresented a material fact or that they owed a duty of disclosure as to the value of the Condo Unit that went above and beyond presenting a copy of the Holyfield appraisal. Therefore, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's claim of constructive fraud.

### 6. Negligence & Wantonness

In Counts 1 and 2 of his Counterclaims/Third Party Complaint, Murphy alleges that Whitney and Pfeiffer both negligently and wantonly "appraised and otherwise approved a

22

loan for a value higher than the value of the underlying property."  (Doc. 6 at 7-8, ¶¶ 20, 25).

> "To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v. Hsu, 602 So. 2d 895, 897 (Ala. 1992). To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty . . . Smith v. Davis, 599 So. 2d 586 (Ala.1992)."

Brushwitz v. Ezell, 757 So. 2d 423, 432-33 (Ala. 2000) (quoting Martin v. Arnold, 643 So. 2d 564, 567 (Ala.1994)) (ellipsis added).

No evidence indicates that either Whitney or Pfeiffer "consciously and intentionally did some wrongful act."  Therefore, in order to prove both his negligence and wantonness claims, Murphy must show that Whitney and/or Pfeiffer breached a duty to him.  In this regard, Murphy has alleged that Whitney and Pfeiffer "had a duty to act in good faith as to [him]" and breached this duty "in its failure to discover the facts and circumstances under which the subject loan was made[,]" resulting in the negligent and wanton inflation of the value of the Condo Unit.  (Doc. 6 at 7-8, ¶¶ 21, 26).  In his Response, Murphy further elaborates that Whitney, as "a lender in a relationship with . . . a prospective borrower," and Pfeiffer, "an experienced loan originator dealing with a loan for the purchase of property with which she was familiar[,] . . . had a duty to accurately convey information concerning Murphy's unit."  (Doc. 54 at 20).  Murphy claims that such a duty arises from circumstances similar to those in Ex parte Hill, 730 So. 2d 214 (Ala. 1998), which held:

> A home buyer may prove that a pest inspector hired by the seller, or by the seller's real-estate agent, has a duty to the buyer to use reasonable care in the inspection, where the buyer shows that the inspector knew the purpose of the inspection and knew that his "letter of clearance" would be presented to, and was for the benefit of, the buyer. Savage v. Wright, 439 So.2d 120, 123 (Ala. 1983). We see no reason that the rationale in Savage should not apply to a

23

> structural inspection by a licensed contractor. Moreover, in this type of situation, the Hills could be found to be third-party beneficiaries of the contract between the real-estate agent and the sellers, on the one hand, and [the contractor], on the other. See <u>Rumford v. Valley Pest Control, Inc.</u>, 629 So. 2d 623 (Ala.1993).

<u>Hill</u>, 730 So. 2d at 217 (Ala. 1998).

As Whitney and Pfeiffer point out, such a holding suggests a duty owed to Murphy not by them but by Holyfield, who is not a party to this action.   Murphy has presented no authority, and the Court is not aware of any, that would impose a duty on Whitney or Pfeiffer to verify the accuracy of all findings made in the report of an independent property appraiser. Moreover, as mentioned earlier, Murphy, while citing numerous perceived flaws and mistakes in Holyfield's appraisal report, has presented no evidence that Holyfield's appraised value of the Condo Unit itself was inaccurate.  Finally, as discussed in Section IV.b.3, *supra*, Murphy has failed to show any circumstances under which Whitney or Pfeiffer would be under a duty to disclose information Murphy did not request.  See <u>Bank of Red Bay</u>, 482 So. 2d at 285; <u>Vision Bank</u>, 2011 WL 5289070, at *12 n.6.  Therefore, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's claims of negligence and wantonness.

### 7.    Civil Conspiracy

In Count 7 of his Counterclaims/Third Party Complaint, Murphy alleges that Whitney, Pfeiffer, "and the developers of the Grander condominiums conspired to inflate the market value of [the Condo Unit] in order to induce Mr. Murphy into closing on the property." (Doc. 6 at 12, ¶ 46).  "Alabama recognizes civil conspiracy as a substantive tort." <u>DGB, LLC v. Hinds</u>, 55 So. 3d 218, 234 (Ala. 2010) (citations and quotations omitted).

However, "[a] plaintiff alleging a conspiracy must have a valid underlying cause of action. A conspiracy claim must fail if the underlying act itself would not support an action." <u>Id.</u> (citations and quotations omitted).  The Court has determined that none of Murphy's other claims against Whitney and Pfeiffer can survive summary judgment.  Therefore, no valid underlying cause of action remains to support a conspiracy claim.  As such, the Court finds that summary judgment is due to be **GRANTED** as to Murphy's claim of civil conspiracy.

### V.      Attorneys' Fees & Costs

The Loan Documents provide for the recovery of collection costs by Whitney from Murphy, including reasonable attorneys' fees.  (Doc. 51-4 at 2, Section 6(E); Doc. 51-5 at 13, ¶ 22).  Whitney requests leave to submit a separate brief to prove the amount and reasonableness of its attorneys' fees and costs incurred in collecting on the Loan Documents. It is **ORDERED** that Whitney's request is **GRANTED.**  Whitney is **ORDERED** to file, on or before **Friday, March 29, 2013,** whatever materials it deems necessary and appropriate to support its claim for costs and fees.[8]  Murphy is **ORDERED** to file any Response on or before **Monday, April 8, 2013,** at which time the Court will take the matter under

---

[8] The Court suggests that Whitney, in preparing its petition for attorneys' fees and costs, keep in mind the following guidance from the Eleventh Circuit:

> The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates . . . [F]ee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

<u>Norman v. Hous. Auth. of City of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988) (internal citations omitted).

submission.[9]

### VI.     Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that Whitney and Pfeiffer's Motion for Summary Judgment (Doc. 49) is **GRANTED** such that judgment is due to be entered in favor of Whitney on its claim for breach of contract and in favor of Whitney and Pfeiffer on Murphy's counterclaims and third party claims, respectively, which are **DISMISSED with prejudice**.  Whitney and Pfeiffer's Motion to Strike (Doc. 57) is **MOOT**.

**DONE** and **ORDERED** this the **22nd** day of **March 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court will enter a final Judgment specifying the amount of damages after a determination is made concerning the issue of attorneys' fees and costs.